UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 2, 2015

HEATHER GRABIN,

                        Plaintiff,

                v.

MARYMOUNT MANHATTAN COLLEGE,

                    Defendant.

--------------------------------------------------X

12 Civ. 3591 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

      Plaintiff Heather Grabin claims to have a blood disorder called thalassemia, and further claims that this disorder compromises her body's immune system. This weakened immune system, according to Plaintiff, makes her more susceptible to contracting various other illnesses. In the fall of 2010, Plaintiff experienced various illnesses, including E. coli and tonsillitis, resulting in hospitalizations that Plaintiff claims prevented her from completing her college course requirements. Consequently, Plaintiff brought this lawsuit, alleging that Defendant Marymount Manhattan College ("Marymount") failed to provide her reasonable accommodations when asked, in violation of Section 504 of the Rehabilitation Act, 28 U.S.C. § 794.

      Plaintiff's claim survived summary judgment in large part because her deposition testimony suggested that medical professionals would substantiate her testimony regarding the diagnosis of thalassemia, the impact of this disorder on her immune system, and its connection to her 2010

hospitalizations.  Her contributions to the parties' Joint Pretrial Order,

however, did not bear this out.  On the eve of trial, Defendant renewed its

motion for summary judgment, arguing that it was now evident from Plaintiff's

list of witnesses and her trial exhibits, as well as the Court's *in limine* rulings,

that she would be unable to establish at trial that she suffers from a qualified

disability or that she was discriminated against on the basis of that disability.

For the reasons discussed in this Opinion, the Court agrees; Marymount's

renewed motion for summary judgment is therefore granted.

## BACKGROUND[1]

### A.    Factual Background

The facts underlying this litigation are set forth in detail in this Court's

Opinion of June 10, 2014, denying Defendant's first motion for summary

---

[1]    The facts set forth herein are drawn from the Court's prior Opinions and Defendant's Local Civil Rule 56.1 Statement ("Def. 56.1") (Dkt. #101), as well as the materials attached as exhibits to the Declaration of Peter Beadle ("Beadle Decl.") (Dkt. #99).  For convenience, Defendant's opening brief is referred to as "Def. Br.," Plaintiff's opposition brief as "Pl. Opp.," and Defendant's reply brief as "Def. Reply."

Plaintiff did not respond to Defendant's 56.1 Statement by submitting a counter-statement as the Local Rules require.  *See, e.g., Millus* v. *D'Angelo*, 224 F.3d 137, 138 (2d Cir. 2000) (per curiam).  However, even in light of Plaintiff's failure, Defendant still bears the "burden of showing that it is entitled to judgment as a matter of law."  *Holtz* v. *Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001).  That said, Plaintiff's silence as to the existence of any genuine issues of material fact at this juncture cannot be ignored.  More significant than the mere failure to comply with the Local Rules, Plaintiff failed in her opposition to submit any of the medical records she contends would be admissible at trial.  It is unclear whether this failure is due to an oversight, reflects a general insouciance with respect to this action, or simply confirms that the evidentiary deficiencies identified by the Court in its prior decisions remain even as the case was set to proceed to trial.  *See Grabin* v. *Marymount Manhattan Coll.,* No. 12 Civ. 3591 (KPF), 2014 WL 3639136, at *4 (S.D.N.Y. July 22, 2014) ("[T]he evidence that is currently in the record may well be insufficient to carry the day at trial.").  In any event, because this Court prefers to decide matters on the merits rather than on technicalities when reasonable and practicable, it will exercise its discretion to "conduct an assiduous review of the record" — which, given the procedural posture of this case, includes the parties' pretrial submissions.  *Holtz*, 258 F.3d at 74 (citation omitted).  Accordingly, citations to the records that were to be Plaintiff's trial exhibits, which were referenced in

judgment, and touched upon again in the Court's Opinion of July 22, 2014, denying Defendant's motion for reconsideration. *Grabin* v. *Marymount Manhattan Coll.* ("*Grabin I*"), No. 12 Civ. 3591 (KPF), 2014 WL 2592416, at *1-10 (S.D.N.Y. June 10, 2014), *reconsideration denied*, *Grabin* v. *Marymount Manhattan Coll.* ("*Grabin II*"), No. 12 Civ. 3591 (KPF), 2014 WL 3639136, at *3-4 (S.D.N.Y. July 22, 2014). Although familiarity with the facts is assumed, the Court will briefly recap the details most relevant to the instant motion.

Plaintiff testified at her deposition that she suffers from thalassemia, a genetic blood disorder that causes shortness of breath and tiredness, numbness in her limbs, and fainting and blackouts. Most significantly, Plaintiff testified that she was highly susceptible to infections, which often resulted in her hospitalization. *Grabin I*, 2014 WL 2592416, at *1.

Plaintiff was an undergraduate student at Marymount between September 2008 and December 2010, majoring in Communication Arts. *Grabin I*, 2014 WL 2592416, at *1. Plaintiff was scheduled to graduate in the fall of 2010, upon completion of her fall courses. *Id.* In the fall of 2010, Plaintiff enrolled in Communications 225, or "Digital Media I Web Workshop"

---

the parties' Joint Pretrial Order (Beadle Decl., Ex. C ("JPTO")), are referred to as "PX __," and cited where helpful to the Court's evaluation of the instant motion.

On October 24, 2014, Plaintiff submitted a hard copy of her trial exhibits to Chambers. (*See* Dkt. #94 at 5, 35; Dkt. #96 at 13, 18). The majority of the pages are not bates-stamped, and many contain no, or internally inconsistent, page numbers. The Court will refer to specific portions of the exhibits by bates number where possible; where that is not possible, the Court will reference the pagination that would have appeared had each hard-copy exhibit been page-numbered sequentially.

("Comm 225"), which was taught by visiting professor Blake Carrington. *Id.* The syllabus to Comm 225 warns that three unexcused absences will result in failure of that course. *Id.* at *3. The syllabus also states that students are required to complete a major group project, and that their grades will be based upon the number of points they are awarded for that project, along with other assignments throughout the semester. *Id.*

Plaintiff testified that she missed four Comm 225 classes in the fall of 2010: three in November and one in December. *Grabin I*, 2014 WL 2592416, at *4. She testified that she was either hospitalized or in the doctor's office during each of the four absences. *Id.* Specifically, Plaintiff contracted E. coli and tonsillitis during that semester, and she testified that she was hospitalized several times between November and December. *Id.* Plaintiff also testified that she was informed by her doctors that those infections were related to or resulted from her thalassemia. *Id.*

Plaintiff informed Carrington and Marymount administrators about her illnesses in November and December 2010. *Grabin I*, 2014 WL 2592416, at *4-10. When Plaintiff asked Carrington if she could do anything to make up her coursework for Comm 225, and to obtain a passing grade, he indicated that she could not; he suggested that unless she wanted to receive a failing grade, she should withdraw from the course. *See id.* at *6-7.

Plaintiff ultimately received a grade of "UW," or unofficial withdrawal, in Comm 225, which means she did not pass the course. *Grabin I*, 2014 WL 2592416, at *1, 3, & n.10. Carrington gave two reasons for Plaintiff's lack of

passing grade: first, she missed a number of assignments, and ultimately received a grade of 20 points out of a possible 100, and second, she had three unexcused absences in November 2010. *Id.* at *3. Plaintiff enrolled in three other courses that semester, and received passing grades in those courses. *Id.* at *1. As a result of the "UW" grade in Comm 225, Plaintiff did not have sufficient credits to graduate. *Id.*

Plaintiff continued to communicate with Marymount officials throughout 2011, in an effort to have her grade changed. *Grabin I*, 2014 WL 2592416, at *9-10. They refused to do so. *See id.* at *10. ("[A]cademic standards and princip[les] of academic freedom prohibit the College from intervening to force a professor to change the grade awarded to a student absent a showing that the professor acted unfairly or improperly in determining the grade." (citing to record)). Her subsequent appeal of the grade was denied. *See id.* ("[A]lthough [Plaintiff] had a serious condition and ... missed classes, it does not mean that [those absences] were excused with the doctor's notes. And ... the fact that [Plaintiff] missed classes, whether they were excused or not, is grounds for failure." (citing to record)). To date, Plaintiff has not obtained her college degree; she needs the credits from Comm 225, or a similar course, in order to satisfy her degree requirements. *Id.*

## B.   Procedural Background

### 1.   The Court's Denial of Summary Judgment

After nearly 10 months of particularly contentious discovery, Defendant filed a motion for summary judgment. *Grabin I*, 2014 WL 2592416, at *11. On

June 10, 2014, the Court denied this motion. *Id.* at *1. Presented with a "woefully inadequate record" — the blame for which was laid at the feet of both parties — the Court found that genuine issues of material fact precluded summary judgment. *Id.* at *1 n.3. Although declaring a nominal victory for Plaintiff, the Court noted that the core issue that foreclosed summary judgment in Defendant's favor also presaged serious deficiencies in Plaintiff's case: namely, that "the deposition testimony ... reference[d] a number of documents and medical records" that "the parties [did] not see[] fit to submit ... to the Court[.]" *Id.*

The lack of any documentation corroborating Plaintiff's deposition testimony became a *leitmotif* of the Opinion:

> Plaintiff testified that she suffers from thalassemia, a genetic blood disorder, and that as result, she experiences severe anemia, exhaustion, and frequent infections and hospitalizations. Plaintiff has produced a medical journal article about thalassemia, but has submitted no evidence in connection with this motion corroborating the fact that she has been diagnosed with thalassemia, or more importantly, that it affects a major life activity. ... As Plaintiff bears the burden of proof on her *prima facie* case, her failure to submit corroborating documentation is potentially fatal to her claim. However, the Court finds that because both parties have failed to submit numerous relevant documents to the Court — in particular, documents specifically referenced during [the] depositions — it is not appropriate to award summary judgment on this basis. ... Plaintiff referred to a number of e-mails, records, doctor's notes, doctor's diagnoses, and medical records in her deposition testimony, none of which were produced to the Court. If Plaintiff did produce these documents at trial, a reasonable fact-finder could determine that she suffered from a disability, namely

> thalassemia, and that the disability affected a major life
> activity, namely the functioning of her immune system.

*Grabin I*, 2014 WL 2592416, at *12-13 (internal citations omitted); *see also id.*
at *1 ("Plaintiff has not submitted any medical records pertaining to her
thalassemia in connection with this motion, despite testifying to [the] existence
[of such records] in her deposition."); *id.* at *4 ("Grabin has not submitted any
medical records pertaining to these hospitalizations in connection with this
motion."); *id.* at *13 ("[The] record … indicates that relevant documents exist
that could have supported … Plaintiff's testimony, [but the] parties have simply
chosen … not to submit them.").[2]

### 2.    The Court's Denial of Defendant's Motion for Reconsideration

Seizing belatedly on the issues regarding medical documentation raised
*sua sponte* by the Court in *Grabin I*, Defendant filed a motion for
reconsideration pursuant to Rule 6.3 of the Local Rules.  *See Grabin II*, 2014
WL 3639136, at *2 ("[T]he Court *sua sponte* raised, and cited case law relevant
to, the issue of medical documentation in the context of a plaintiff's *prima facie*
burden.").  On July 22, 2014, the Court denied Defendant's motion for
reconsideration, noting that Defendant's summary judgment brief had "failed to
discuss the impact, if any, of medical evidence on Plaintiff's *prima facie*
burden," and finding the request for reconsideration to be "nothing more than

---

[2]    The Court does not here mean to single out the inadequacy of Plaintiff's efforts during
discovery and at the summary judgment stage; it just so happens to be more relevant to
the instant motion.  *See, e.g.*, *Grabin I*, 2014 WL 2592416, at *13 ("Defendant also fails
to introduce any evidence or relevant documents, but instead relies on the legal
argument of counsel.").

an improper effort to coopt the Court's Opinion as a jumping-off point to advance new arguments and cite new case law." *Id.* at *1-2. Lest the Court's denial of Defendant's motion be construed as harbinger of Plaintiff's eventual success — rather than reflecting the Court's disapproval of Defendant's recourse to Local Rule 6.3 — the Court reiterated its concern that "Plaintiff's failure to produce the[] [medical] records could be 'fatal' to her claims," and noted "that the evidence that is currently in the record may well be insufficient to carry the day at trial." *Id.* at *4. Hinting at the fallow evidentiary record on summary judgment, the Court concluded by noting "that justice for both sides [would be] best achieved with a pretrial resolution of this matter." *Id.* Despite the Court's warnings, and its plea for the parties to engage in settlement discussions that took into account the peculiar and conspicuous weaknesses identified by the Court's Opinions, the parties were unable to settle. (*See* Dkt. #77, 79).

### 3.    The Joint Pretrial Order and Plaintiff's Trial Exhibits

On September 22, 2014, after receiving an extension from the Court to permit the parties additional time to consummate a settlement (*see* Dkt. #77; *see also* Dkt. #79 (denying a second request for an extension)), the parties submitted their proposed Joint Pretrial Order ("JPTO"). In the JPTO, Plaintiff disclosed the following witnesses: herself, Carrington, and two administrators from Marymount. (JPTO 4). With respect to her testimony, Plaintiff indicated that "[s]he will testify as to the defendant's refusal to give her a reasonable accommodation so that she could meet the degree requirements." (*Id.*).

8

Plaintiff did not disclose as witnesses any of her treating physicians or experts who would testify regarding her thalassemia, the state of her immune system at various relevant points in time, or the illnesses and hospitalizations she experienced during the fall of 2010.  (*See* Def. 56.1 ¶ 5).  Although the JPTO did not disclose that Plaintiff herself intended to discuss her medical issues, subsequent motions *in limine* — and particularly Plaintiff's responses thereto — made clear that the jury would be hearing about Plaintiff's medical conditions solely through her testimony.  (*See, e.g.*, Dkt. #92 at 4 (arguing Plaintiff could "offer testimony based on her perceptions on thalassemia, … [and] causation as to its relationship to other illness"); Dkt. #94 at 13 ("What she will testify to is what she knows as to how thalassemia affects her immune system.")).  With respect to Plaintiff's other witnesses, the JPTO indicated that they would "testify as to the defendant's policy as to the Rehabilitation Act and Plaintiff[']s absences from college."  (JPTO 4).

With respect to documentary evidence, Plaintiff planned to introduce as exhibits at trial excerpts of records pertaining to Plaintiff from five health centers.  (JPTO 5-6).[3]  The Court will briefly summarize the contents of these records.

---

[3]    The Court notes that admission of these exhibits at trial was not a foregone conclusion. None of the custodians of these medical records appeared on Plaintiff's list of witnesses, and at no point prior to trial did Plaintiff submit a certification that would satisfy Federal Rules of Evidence 902(11) and 803(6).  Also, as the Court noted a week before trial was scheduled to begin, "[n]o one has suggested … that there exists an exception under the hearsay rules … contained in Federal Rule of Evidence 803(4) for statements made for medical diagnoses or treatment. …  [N]o one has suggested that this is a provision under which anybody is proceeding."  (*See* Dkt. #96 at 12-13.  *But see* Pl. Opp. 3-4 (arguing that Rule 803(4) would permit Plaintiff to offer such testimony)).

Exhibit 1 contains records from Pocono Medical Center from 2008 to 2013.  (JPTO 5).  These documents contain references to thalassemia, typically in the "patient history" section of the records, and usually qualifying the type of thalassemia as "minor."  (*See, e.g.*, PX 1 at 3 ("Problems: … Thalassemia minor anemia"); *id.* at 4 ("known [to have] beta-thal minor"); *id.* at 7 ("Anemia most likely from the thalassemia type with a normal [mean corpuscular volume].")).  Exhibits 2 and 3 contain records from St. Luke's Roosevelt Hospital during April 2009, which refer to thalassemia in a similar manner.  (*See* PX 2 at 1 ("The history was provided by the patient.  [P]atient appears as reliable historian. … Medical History: Thalass[]emia minor."); PX 3 at 1 ("Medical History: Thalass[]emia minor").  Notably, these records reflect Plaintiff's statements to medical professionals; Plaintiff concedes that none of these records includes, or refers to, any test results confirming a diagnosis of thalassemia, or linking thalassemia to her illnesses and hospitalizations in the fall of 2010.  (*See generally* Def. 56.1 ¶¶ 6-9).

Exhibit 4 contains, *inter alia*, an e-mail from a medical assistant at Marymount's Dow Zanghi Student Health Center (the "Student Health Center"), dated November 30, 2010, to Marymount administrator Carol Jackson.  (PX 4 at MCC000961-62).  This particular exhibit corroborates Plaintiff's tonsillitis in November 2010, but bears no mention of thalassemia.  In relevant part, the medical assistant informs Jackson that:

> [Plaintiff] was evaluated on [November 10, 2010] at the [Student Health Center] regarding a throat infection and was given Rx antibiotics.  The throat pain has returned

> and the student has been admitted to Beth Israel
> Hospital for severe throat pain/tonsillitis.  I spoke to
> [Plaintiff] today.  She states she has severe tonsillitis
> and a high grade fever.  She is on IV medication because
> she can't swallow pills due to the large abscess on her
> throat.  [Doctors at Beth Israel] are unclear yet as to if
> the tonsils should be removed.  They are waiting to see
> the [ear, nose, and throat] specialist.

(*Id.* at MMC000962).

Finally, Exhibit 6 consists of "progress notes" from the Student Health

Center made on November 30, 2010, December 6, 2010, January 4, 2011,

January 10, 2011, and March 10, 2011.  (PX 6).  On December 6, 2010, an

unidentified medical professional recorded notes from a "post hospital visit"

with Plaintiff.  (*Id.* at 2).  The notations conform to the "S.O.A.P." (Subjective,

Objective, Assessment, Plan) format sometimes employed by medical

professionals to organize such notes.[4]  Next to the notation for "subjective"

data, the notes indicate that Plaintiff "was [at] B[eth] I[srael]" Hospital from

November 30, 2010, to December 3, 2010, where she was diagnosed with

"pharyngitis."  (*Id.* at 2).  The notes proceed to list a number of other illnesses

under this "subjective" notation: "thalassemia minor, TMJ, Peritonsillar

Abscess, Dengue [fever]."  (*Id.*).

Records from Beth Israel Hospital, or any other hospital where Plaintiff

was hospitalized during the fall of 2010, do not appear among Plaintiff's trial

exhibits.  Furthermore, Plaintiff had not identified, and the Court could not

---

[4]     *See Stedman's Medical Dictionary* (27th ed. 2000) (S.O.A.P is the "[a]cronym for
*s*ubjective, *o*bjective, *a*ssessment, and *p*lan; used in problem-oriented records for
organizing follow-up data, evaluation, and planning." (emphases in original)).

locate during its review, any reference to thalassemia in Plaintiff's other trial exhibits, which largely consist of Plaintiff's e-mails with Marymount employees about her illnesses in 2010 and her Comm 225 grade in 2011.  (*Cf.* PX 7 at 1 ("I went to student health center and they had no clue what was wrong with me.  I went to a [doctor] in [Pennsylvania] this week and … they diagnosed me with e-coli."); PX 9 at MMC00970 ("During my last semester at Marymount I was hospitalized for a week.  Before being admitted to the hospital[,] I was very ill and had been at the Student Health Care Clinic a few times.")).

### 4.    The Motions *in Limine*

On the same day the JPTO was submitted, Defendant filed motions *in limine* seeking to preclude Plaintiff from testifying at trial that she had thalassemia, and from testifying that thalassemia was responsible for the illnesses she experienced in the fall of 2010.  (*See* Dkt. #86-89).  The Court heard oral argument on these motions at the final pretrial conference on October 17, 2014.  (Dkt. #94 ("Oct. 17 Tr.")).  During oral argument, the Court reminded counsel for Plaintiff that "Grabin testified that the medical records would demonstrate a connection between her thalassemia and the hospitalizations that she experienced in 2010."  (*Id.* at 11).  When asked if "there [is] in fact documentation in which a doctor … actually draws the causal connection in the diagnosis," Plaintiff's counsel informed the Court that establishing such a connection would "entail Ms. Grabin actually reading the medical charts," and "would have to be based on [Grabin's] testimony about what she disclosed to the physicians."  (*Id.*).  Upon further prodding from the

Court, counsel explained that "[w]hat [Grabin] will testify to is what she knows as to how thalassemia affects her immune system. … [S]he was born with this disease.  She has a history of having this disease." (*Id.* at 13).  The Court expressed skepticism about the admissibility of such testimony:

> I don't see how [Plaintiff] gets to actually be a primer to the jurors about what … thalassemia [is], what are the manifestations of it, what are the causes of it, … and how it impacts her immune system. … I perceive a difference between [Plaintiff] saying "I get sick every week" and saying "I have a compromised immune system because of my thalassemia." … [T]he real question is what is she suffering.  And I am not sure that her consistently telling people that she had a compromised immune system … renders her a person with a compromised immune system [under] the [Rehabilitation] Act.[5] … What I'm trying to understand is why I should permit her to testify as to something that draws such a causal connection between the illness that she is claiming to suffer and these other illnesses and hospitalizations that she has.

(*Id.* at 14-17).  Counsel for Plaintiff conceded that "[i]t is not going to be very open to a layperson, but this is something that has been relayed to [Grabin] by her physicians over the years. … It is not going to be exactly connected, but with her suppressed immune system it's more likely than not that it's going to be connected." (*Id.* at 17, 20-21).

The Court also revisited with the parties how the ADA Amendments Act of 2008 (the "ADAAA"), which amended the Rehabilitation Act, impacted Plaintiff's ability to substantiate her condition solely through her own

---

[5]    While the Rehabilitation Act can extend to individuals who are "regarded as" having a physical or mental impairment that substantially limits one or more major life activities, Plaintiff specifically disclaimed reliance on that provision.  (*See* Oct. 17 Tr. 15-16).

testimony.  *See generally Grabin II*, 2014 WL 3639136, at *3 & n.2.  Counsel for

Defendant acknowledged that the ADAAA makes the establishment of a

disability easier for plaintiffs, but argued that it "doesn't turn [plaintiffs] into

doctors, it doesn't turn them into scientists, and it doesn't obviate the need for

them to meet the scientific requirements.  [Plaintiff] is not in a position to say

that … thalassemia makes her immune[-]compromised."  (Oct. 17 Tr. 33).

On October 27, 2014, the Court convened a telephone conference and

rendered an oral decision on Defendant's motions *in limine*.  (Dkt. #96 ("Oct. 27

Tr.")).  The Court began by explaining how the evidentiary landscape had

crystalized since the prior denial of Defendant's motion for summary judgment:

> I now have a clearer understanding of the record in this
> case, and it's a little bit different than that to which Ms.
> Grabin has testified.  [Counsel for Defendant] has
> represented to the Court — and I don't believe [counsel
> for Plaintiff] disputes it — that there are, in fact, no
> medical records diagnosing Ms. Grabin with
> thalassemia; there are, instead, references [in] medical
> records to Ms. Grabin advising medical personnel that
> she has thalassemia.  There are no actual diagnostic or
> testing records, no lab tests or blood tests.  And I
> understand that there is no contemplated medical
> testimony at the trial about her condition. … [T]here is
> no documentary evidence and no contemplated
> testimony [through] which a person with medical
> training as opposed to Ms. Grabin herself has tied
> [Plaintiff's] illness[es] to [her] claim of thalassemia.

(*Id.* at 5-6).

The Court proceeded to delineate what matters Plaintiff would be

permitted to testify about at trial, based on her competence as a witness and

considering the risk of confusing the jury:

14

I will permit Ms. Grabin to testify to certain physical symptoms that she experiences: Shortness of breath, tiredness, numbness in her limbs, an inability to walk or stand for long periods of time, and fainting or blackouts. ... What I'm not going to do is allow her to testify that these symptoms are the product of a particular medical condition or that she has a medical condition known as thalassemia.  I am also not going to let her testify — whether she describes it as a symptom or as a product of her thalassemia — that she has a compromised immune system, that she has a greater-than-average susceptibility to infections, or that her medical conditions *result in* frequent hospitalizations. To me, the primary issue here is what Ms. Grabin is competent to testify to as a lay witness.  The secondary issues concern the relevance of her firsthand knowledge and observations to a particular fact at issue in this case, and the possibility of unwarranted prejudice to the defense as a result of her testimony.  So to the extent that Ms. Grabin experiences firsthand the conditions that were outlined a moment ago, she is competent to testify to the fact that they occur. ... Statements about particular conditions are things about which Ms. Grabin has personal knowledge. However, broader statements about their purported relationship with thalassemia or any problems with her immune system are decidedly not what a normal person would form from those perceptions, nor are they helpful to the jury given Ms. Grabin's lack of medical training. To the contrary, they would only serve to confuse the jury by suggesting a competence that Ms. Grabin does not have or that there is some diagnostic evidence of this illness somewhere in the record, where there is none. [A]llowing Ms. Grabin to present this information in her testimony would confuse the jury.  And so in addition to disallowing the testimony under Federal Rule of Evidence 701, I will also disallow it under Federal Rule of Evidence 403.

(Oct. 27 Tr. 6-9 (emphasis added)).

The Court also addressed the body of case law that has found a plaintiff's testimony regarding impairments and limitations alone can suffice to bring a disability discrimination claim before a jury.  (Oct. 27 Tr. 9-11).  The Court

15

distinguished these cases because the impairments and life activities implicated in those cases did not require a scientific or medical foundation before a jury could understand the impairment or appreciate how the major life activity had been impacted:

> She's not suggesting in this case that her inability to attend Professor Carrington's class or to complete the assignments was the product of one of the physical manifestations that I have outlined, such as a shortness of breath or numbness of hands.  Rather, there's an additional inferential leap that she is asking the jurors to make; namely, that she has a compromised immune system.  And because of that, she is more susceptible; and because of that, she has the illnesses for which she was hospitalized, and states that they at least are more likely than not connected to her thalassemia. ... [T]hat is far beyond what any other case has allowed to be proved by plaintiff's testimony alone. And on this record, I believe that some medical evidence of some sort is needed regarding the diagnosis of the thalassemia, or what I will term the not-easily-observable effects of the condition such as the compromised immune system.

(*Id.* at 10-11).

Additionally, the Court ruled that Plaintiff would not be permitted to testify that she has thalassemia:

> The[] related question ... is whether I will permit Ms. Grabin to testify that she has thalassemia.  And having thought about it, I will not.  There is no evidence in the record that Ms. Grabin has thalassemia; instead, the contemplated testimony is that she was diagnosed at some point in her life with thalassemia, but that diagnosis, as I've noted, would be hearsay.  Ms. Grabin is not competent to diagnose herself as having thalassemia.  And so under Federal Rule of Evidence 701, she may not testify to such a diagnosis.  Similarly, Ms. Grabin is not competent under Federal Rule of Evidence 701 or, alternatively, on the current record, such testimony would not be relevant or appropriate

16

> under Federal Rules of Evidence 401, 402, 403, and
> 104(b), to provide a primer to the jury on what
> thalassemia is, how it manifests itself, and how it can
> relate to or cause other medical conditions.

(Oct. 27 Tr. 11).[6]

Finally, the Court addressed Plaintiff's ability to testify as to the correlation

between her thalassemia and the illnesses she suffered in late 2010:

> [F]or similar reasons, I will preclude Ms. Grabin from
> offering testimony or documents in an attempt to
> discern a causal relationship between the medical
> issues that she experiences and the hospitalizations
> that she experienced during her last semester at
> Marymount. Indeed the rationale for preclusion is even
> stronger here. Ms. Grabin is not claiming that a
> particular medical condition such as numbness in
> hands caused her to miss the class, but, rather, that
> her thalassemia led to increased susceptibility to
> infection, which, in turn, led to the two
> hospitalizations. … Under Federal Rules of Evidence
> 701 and 104(b), having failed to establish the
> thalassemia, I think Ms. Grabin would lack the
> competence to testify that her thalassemia caused the
> hospitalizations. Now, just to be clear, I believe Ms.
> Grabin can testify that she was hospitalized for the two

---

[6]     A few words about this portion of the Court's *in limine* rulings are in order: As noted
earlier, Plaintiff did not argue that Federal Rule of Evidence 803(4) permitted her to
introduce statements regarding a previous diagnosis that she subsequently related to
medical providers; the Court accordingly did not advance such an argument for her.
*See* n.3, *supra.*  Nor did Plaintiff argue that an exception to the hearsay rules permitted
her to testify as to any previous diagnosis she may have received from a medical
provider.  *Cf.* 5 *Weinstein's Federal Evidence* § 803.06[9] ("Rule 803(4) does not provide
a hearsay exception for statements made by the doctor … to the patient." (citing
*Bombard* v. *Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 564 (7th Cir. 1996); *Bulthuis* v.
*Rexall Corp.*, 789 F.2d 1315, 1316 (9th Cir. 1985))).  To the extent, however, that
Plaintiff's argument was grounded in an exception to the hearsay rules, the Court
nonetheless remained concerned that allowing Plaintiff to testify as to the diagnosis
would improperly confuse the jury, since Plaintiff would not have been competent to
testify to the continuum of thalassemia conditions, the symptoms attendant to each,
and her placement on that continuum.  In any event, the instant Opinion does not
depend on that ruling, but rather flows naturally from the Court's separate ruling that
Plaintiff could not testify concerning the relationship, if any, between thalassemia and
any of her 2010 hospitalizations, and that Plaintiff otherwise had no evidence in that
regard.

> illnesses.  What she may not do is testify that they
> related to any preexisting medical condition on her part,
> given the evidence that has been identified to me by the
> parties.

(Oct. 27 Tr. 14-15).

At the end of the conference, in light of the Court's rulings, Defendant moved the Court for leave to file a second summary judgment motion.  (Oct. 27 Tr. 18, 20-21).[7]

### 5.  Defendant's Renewed Motion for Summary Judgment

After considering Defendant's request, the Court granted Defendant's request to file a second motion for summary judgment.[8]  The Court adjourned the trial *sine die*, and set a schedule for summary judgment briefing.  (Dkt. #93).  Defendant moved for summary judgment on November 21, 2014.  (Dkt. #98-101).  Plaintiff filed her opposition on December 19, 2014 (Dkt. #103), and the motion was fully submitted as of the filing of Defendant's reply on January 5, 2015 (Dkt. #104).

---

[7]     Specifically, counsel for Defendant asked that in light of the Court's "ruling on the second motion with respect to correlation," it be permitted "to make a renewed motion for summary judgment dismissing the action."  (Oct. 27 Tr. 18).  Counsel argued that "if [Plaintiff] cannot establish that correlation, ... that the reason she missed classes and assignments was because of a disability, then we don't need to go any further.  Even if [the Court] allowed records to come in establishing that she had some sort of history of thalassemia, there's nothing in those records that establish correlation.  We know that now. ... And your decision now on correlation is a new thing.  And the motion would be based on this new thing that has just happened.  And so I think it should be permitted to be briefed and go forward."  (*Id.* at 20-21).

[8]     The Court was persuaded that its rulings on Defendant's motions *in limine* provided a sufficient basis for filing a second motion for summary judgment.  *See, e.g.*, *Brown* v. *City of Syracuse*, 673 F.3d 141, 147 n.2 (2d Cir. 2012) ("[G]iven the district court's evidentiary ruling on the motion *in limine* and its effect on the factual record, the [defendants] had reason to move again for summary judgment." (internal citation omitted)).

6.     **Post-Briefing Activity**

On January 20, 2015, 15 days after the motion had been fully submitted, Plaintiff filed a notice of substitution of counsel. (Dkt. #107). On March 17, 2015, nearly two months after appearing in this action, new counsel for Plaintiff submitted a request while the motion for summary judgment remained *sub judice.* New counsel requested the opportunity to file a "proper" opposition to Defendant's motion for summary judgment, and to "amend the pre-trial order to add medical witnesses." (Dkt. #108). After the parties filed several additional letters (Dkt. #109-11), the Court held a telephone conference with Plaintiff's new counsel and counsel for Defendant, during which time the Court heard oral argument from the parties, and denied Plaintiff's request in its entirety (Dkt. #112).

## DISCUSSION

A.    **Summary Judgment Motions Generally**

Under Fed. R. Civ. P. 56(a), summary judgment may be granted only if all the submissions taken together "show[] that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may discharge this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan* v. *N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (finding summary judgment appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial" using affidavits or otherwise, and cannot rely on the "mere allegations or denials" contained in the pleadings. *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright* v. *Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal quotation marks omitted), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles* v. *Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise

exist." *Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher* v. *Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotation marks and citations omitted)).

Although successive summary judgment motions are disfavored, *see Siemens Westinghouse Power Corp.* v. *Dick Corp.*, 219 F.R.D. 552, 554 (S.D.N.Y. 2004), a district court may in its discretion review a successive summary judgment motion seeking precisely the same relief as before. *See Brown* v. *City of Syracuse*, 673 F.3d 141, 147 n.2 (2d Cir. 2012) ("[S]uccessive motions for summary judgment may be procedurally improper if the arguments in the second motion could have been raised in the first motion, but given the district court's evidentiary ruling on the motion *in limine* and its effect on the factual record, the [defendants] had reason to move again for summary judgment." (internal citation omitted)); *Sira* v. *Morton*, 380 F.3d 57, 68 (2d Cir. 2004) ("[D]istrict courts enjoy considerable discretion in entertaining successive dispositive motions." (citing *Kovacevich* v. *Kent State Univ.*, 224 F.3d 806, 835 (6th Cir. 2000) ("District courts may in their discretion permit renewed or successive motions for summary judgment."))).

## B.    Analysis

Section 504 of the Rehabilitation Act applies to institutions receiving federal financial assistance, such as Marymount, and provides that "'[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under' any covered program or activity."

21

*Powell* v. *Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004) (quoting 29 U.S.C. § 794(a)), *opinion corrected*, 511 F.3d 238 (2d Cir. 2004).  In order to establish a *prima facie* violation of Section 504, a plaintiff bears the burden of demonstrating that: (i) "she is a 'qualified individual' with a disability"; (ii) the defendant is "subject to Section 504"; and (iii) "she was 'denied the opportunity to participate in or benefit from defendant['s] services, programs, or activities, or was otherwise discriminated against by defendant[], by reason of her disability.'"  *Id.* (quoting *Henrietta D.* v. *Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (emendations in *Powell* omitted)); *see also Heilweil* v. *Mount Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir. 1994) ("The plaintiff in a Rehabilitation Act suit bears the initial burden of establishing a *prima facie* case under the Act.").

    As with the first summary judgment motion, the parties agree that Defendant is subject to Section 504, in satisfaction of the second prong; at issue here are the first and third prongs, namely, whether Plaintiff is a qualified individual, and whether she was discriminated against as a result of her disability.  The Court concludes that Plaintiff has failed to satisfy either of these two prongs of her *prima facie* case.

### 1.    Plaintiff Cannot Establish She Has a Disability

    A plaintiff must make three showings in order to demonstrate that she is disabled under the Rehabilitation Act, in satisfaction of the first prong: (i) plaintiff "suffers from a physical or mental impairment"; (ii) "plaintiff must identify the activity claimed to be impaired and establish that it constitutes a 'major life activity'"; (iii) "plaintiff must show that her impairment 'substantially

limits' the major life activity previously identified." *Weixel* v. *Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 147 (2d Cir. 2002) (internal citations omitted).  As relevant to this case, "a major life activity … includes the operation of a major bodily function, including but not limited to, functions of the immune system[.]"  42 U.S.C. § 12102(2)(B).

Post-ADAAA regulations state that whether an impairment "substantially limits" a major life activity "is not meant to be a demanding standard," and "should not demand extensive analysis."  29 C.F.R. § 1630.2(j)(1)(i), (iii); *see also Parada* v. *Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 69 n.3 (2d Cir. 2014)   Pursuant to these regulations, "[a]n impairment is a disability … if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population.  An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting."  29 C.F.R. § 1630.2(j)(1)(ii).  Any such "comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population usually will not require scientific, medical, or statistical analysis," and any "determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures."  *Id.* § 1630.2(j)(1)(v), (j)(1)(vi).

Plaintiff has identified her impairment as thalassemia, and the major life activity that she alleges to be limited is the functioning of her immune system.

(*See* Oct. 17 Tr. 19-20).[9]  The question that the Court must resolve is whether Plaintiff has met her *prima facie* burden of showing that thalassemia "substantially limits" the functioning of her immune system.  Even assuming the admissibility of the medical records referenced in the JPTO, and even if Plaintiff were permitted to testify that she has thalassemia, a reasonable factfinder could not conclude that Plaintiff suffers from this particular impairment without a specific medical diagnosis or testimony from a treating physician.  *Compare Willoughby* v. *Conn. Container Corp.,* No. 11 Civ. 992 (CSH), 2013 WL 6198210, at *9 (D. Conn. Nov. 27, 2013) (finding that "Plaintiff … established through testimony *and medical documentation* that he suffers from diabetes and high blood pressure" (emphasis added)), *and Mitchell* v. *N.Y.C. Transit Auth.*, 856 F. Supp. 2d 478, 483 (E.D.N.Y. 2012) (finding "it … clear that Plaintiff's diverticulitis qualifies as a physical impairment, … affect[ing] his digestive system" where it "ha[d] been confirmed by Plaintiff's own physician and the … medical department"), *with Diaz* v. *Saucon Valley Manor Inc.*, 579 F. App'x 104, 106 (3d Cir. 2014) (unpublished opinion) (contrasting disability of alcoholism, which requires no medical evidence, with "some medical condition involving the central nervous system [that] nobody can pronounce"), *and Jennings* v. *AAON, Inc.*, No. 14 Civ. 347

---

[9]      During the final pretrial conference, in response to the Court's question, "What is the life activity that [Plaintiff] is claiming is compromised by th[alassemia]," counsel for Plaintiff indicated that his client "is going to have a systemic problem for the rest of her life, which is a compromised immune system.  So she will always be prone to … illnesses that a normal person may recover [from,] for her [these illnesses] might be a little bit more severe, and she's more prone to infections, colds, flus, those sort of illnesses."  (Oct. 17 Tr. 20).

(CVE), 2015 WL 3465834, at *6 (N.D. Okla. June 1, 2015) (rejecting the "self-diagnosis of an impairment," and noting that plaintiff's "lay opinion [regarding] a mold allergy is inadmissible and ... is not an acceptable substitute for medical evidence or the testimony of a medical expert").

The bulk of Plaintiff's opposition is devoted to argument that, pursuant to Federal Rule of Evidence 803(4), Plaintiff should be permitted to testify as to statements she made to her doctors over the years that she had "thalassemia." (*See* Pl. Opp. 3-5). *See generally* Fed. R. Evid. 803(4) (excluding from rule against hearsay statements made by a patient for medical diagnosis or treatment). Thus the submission is more akin to a belated motion for reconsideration of the Court's motion *in limine* rulings than an opposition to Defendant's motion for summary judgment. Perhaps even more significant than Plaintiff's failure to rebut Defendant's arguments, Plaintiff's submission reinforces the Court's decision that medical testimony is needed in this particular case. Reviewing Plaintiff's opposition, it appears that "thalassemia" — the term for Plaintiff's impairment that the parties have used, and that the Court has adopted — is imprecise to the point of being of no utility to a factfinder. As Plaintiff's opposition makes clear, "[t]halassemia is the name of *a group of inherited blood disorders* that causes the body to make less hemoglobin, the substance in red blood cells that transports oxygen from the lungs to other parts of the body." (Pl. Opp. at 3 n.2 (emphasis added, citation omitted)). As Plaintiff illustrates in her opposition, the symptoms one experiences can vary greatly depending on the type of thalassemia at issue.

(*Id.*).  For example, "thalassemia major" requires regular blood transfusions and causes excruciating pain; "thalassemia intermedia" can cause moderately severe anemia; and, finally, "thalassemia minor" causes "no major symptoms." (*Id.*).  In sum, even if Plaintiff were to testify that she had "thalassemia," the jury could not properly draw any factual conclusions relevant to her Rehabilitation Act claim from that piece of testimony.[10]

Despite its serious doubts regarding Plaintiff's establishment of an impairment in the form of thalassemia, the Court need not resolve this particular issue.  Even assuming for the purposes of this motion that Plaintiff suffers from the impairment of thalassemia, there is simply no evidence in the record (defined to include the materials submitted in connection with trial) from which a jury could conclude that thalassemia substantially impacts the normal functioning of Plaintiff's immune system.  That is because, under these circumstances, Plaintiff's alleged disability is necessarily dependent on knowledge of how the body's immune system works, and how thalassemia affects its normal function — evidence that Plaintiff cannot provide herself and has not provided through any other source.  Plaintiff has failed to meet her *prima facie* burden in this regard.  Accordingly, summary judgment in favor of Defendant is warranted.

---

[10]     As but one concern, several of the medical records submitted by Plaintiff as contemplated trial exhibits refer to thalassemia minor, a diagnosis that, according to Plaintiff's opposition brief, would not encompass the symptoms to which she testified at her deposition.

The Court is aware that "comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population *usually* will not require scientific, medical, or statistical analysis." 29 C.F.R. § 1630.2(j)(1)(v) (emphasis added).  As the Second Circuit recently explained in *Rodriguez* v. *Village Green Realty, Inc.*, — F.3d —, No. 13-4792-cv, 2015 WL 3461554, at *7 (2d Cir. June 2, 2015), a disability discrimination case brought pursuant to the Fair Housing Act ("FHA"), medical evidence is not "always required for a [plaintiff] to survive summary judgment"[11]:

> Neither the [statutory] text, nor the respective implementing regulations require medical evidence to establish a genuine dispute of material fact regarding the impairment of a major life activity at the summary judgment stage. … Medical testimony may be helpful to show that an impairment is substantially limiting, but it is not always necessary. … [N]on-medical evidence that conveys, in detail, the substantially limiting nature of an impairment may be sufficient to survive summary judgment.

*Id.*, at *7-8 (internal citations omitted).  Indeed, many major life activities are equally amenable to proof through non-medical evidence.  For example, the impairment of the major life activity in *Rodriguez* — "the ability to learn" — could be demonstrated through testimony regarding the plaintiff's difficulties at school.  *See id.* at *8 ("The nature of the specific services [at

---

[11]   The Court notes that the analyses under the FHA and the Rehabilitation Act are not identical, in large part because the ADAAA did not amend the FHA in the same way it amended the Rehabilitation Act and the ADA.  *Rodriguez,* 2015 WL 3461554, at *4-7 & nn.8, 10, 13.  The Second Circuit's guidance on the need for medical evidence in certain disability discrimination cases nonetheless provides a useful and timely reference point.

school] she requires shows the extent to which her impairments affect her
ability to learn, and the additional evidence of how she has struggled
notwithstanding ... the support she receives at school create a triable question
of fact precluding summary judgment."); *id.* at *12 ("A jury could reasonably
infer from the extensive educational support [plaintiff] receives that she is
significantly limited in her ability to independently register and process
information, pay attention to educators, take notes, read, and complete
homework."); *see also Kravtsov* v. *Town of Greenburgh*, No. 10 Civ. 3142 (CS),
2012 WL 2719663, at *11 (S.D.N.Y. July 9, 2012) (jury could find, based on
plaintiff's description of his impairment, that he was "substantially limited" in
the major life activities of eating and digesting food).  But not all major life
activities are comprehensible through lay testimony.  This is unsurprising
given the array of complicated bodily functions that qualify as major life
activities under the Rehabilitation Act.  *See* 42 U.S.C. § 12102(2)(B).  Indeed, to
acknowledge that "[m]edical testimony ... is not always necessary," is to accept
that sometimes medical testimony *will* be necessary to "convey[], in detail, the
substantially limiting nature of an impairment."  *Rodriguez*, 2015 WL 3461554,
at *7-8.[12]  This case presents such a scenario.  There is no evidence in the

---

[12]    It is perhaps too crude an approximation to be useful in every case, but it nonetheless
appears fair to say that establishing the impairment of a major life activity enumerated
in Section 12102(2)(A), is unlikely to require medical documentation; establishing the
impairment of a major bodily function, listed at Section 12102(2)(B), is more likely to
require explanation and corroboration from a medical source.  *Compare* 42 U.S.C.
§ 12102(2)(A) ("Caring for oneself, performing manual tasks, seeing, hearing, eating,
sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing,
learning, reading, concentrating, thinking, communicating, interacting with others, and
working."), *with id.* § 12102(2)(B) ("The operation of a major bodily function, including
functions of the immune system, special sense organs and skin; normal cell growth;

record with which a jury could evaluate thalassemia's effect on the body's immune system. *Compare Alexiadis* v. *N.Y. Coll. of Health Professions*, 891 F. Supp. 2d 418, 429-30 (E.D.N.Y. 2012) (finding that a "rational factfinder could conclude that plaintiff's HIV-positive status … substantially limited the major life activity of the function of his immune system" where there was, *inter alia*, "evidence concerning … plaintiff's T-cell levels"), *with Baptista* v. *Hartford Bd. of Educ.*, 427 F. App'x 39, 42 (2d Cir. 2011) (summary order) (conclusory allegation that HIV-positive status affected major life activity did not suffice). *See also Scavetta* v. *Dillon Cos., Inc.*, 569 F. App'x 622, 625-26 (10th Cir. 2014) (unpublished opinion) (where "there was no specific evidence that [rheumatoid arthritis] substantially limited the operation of [plaintiff's] major bodily functions, the court correctly declined to reference major bodily functions in its [jury] instruction"). Similarly, there is no evidence in the record with which a jury could compare the functioning of Plaintiff's immune system with that of the general population. *Cf. E.E.O.C.* v. *AutoZone, Inc.*, 630 F.3d 635, 644 (7th Cir. 2010) (finding where "the scope of a physical limitation … is obvious to an observer and easily described by the sufferer … no medical evidence about [the] precise limitations [i]s necessary to defeat … summary judgment" (cited in *Rodriguez*, 2015 WL 3461554, at *7)); *Montgomery* v. *Pinchak*, 294 F.3d 492, 504 (3d Cir. 2002) ("[Immune disorders] unlike, for example, broken legs or bullet wounds, do not clearly manifest themselves in ways that are obvious and

---

and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions.").

ascertainable to a lay person. … [T]o prove any serious deterioration in … his immune system, [plaintiff] would need the testimony of a medical expert.").

The lack of nexus between Plaintiff's claims of impairment and major life activity is an insurmountable hurdle for Plaintiff's case.  It is not enough to show an impairment and an unrelated — albeit limited — major life activity. The *impairment* must limit the major life activity; and there is no record evidence of the requisite link between the two.  *See, e.g.*, *Felkins* v. *City of Lakewood*, 774 F.3d 647, 653 (10th Cir. 2014) (acknowledging the plaintiff-friendly enhancements of the ADAAA, but affirming summary judgment in favor of defendants where plaintiff failed to "provide[] proper evidence that any limitation she may have [wa]s *caused* by avascular necrosis" (emphasis in original)); *cf. Willoughby*, 2013 WL 6198210, at *9 (finding that plaintiff who established he suffered from "hyperglycemia, dehydration, tachycardia, high blood sugar, difficultly standing, … dizziness and faintness … *due to diabetes* … could indeed easily be found by a jury to … ha[ve] a disability under the ADA" (emphasis in original)).  Nor has Plaintiff asserted that the inherent nature of thalassemia is such that its effect on the immune system is predictable.  *Cf.* 29 C.F.R. § 1630.2(j)(3)(ii)-(iii) ("Given their inherent nature, [some] types of impairments will, as a factual matter, virtually always be found to impose a substantial limitation on a major life activity. … For example, Human Immunodeficiency Virus (HIV) infection substantially limits immune function[.]").  Indeed, any such contention is belied by the repeated reference in Plaintiff's trial exhibits to "thalassemia minor," *see* Background Sec. B(3),

*supra*, and the definition of "thalassemia minor" cited in Plaintiff's opposition brief: "Someone with thalassemia minor *has no major symptoms* and is just a carrier of the genetic trait for thalassemia" (Pl. Opp. 3 n.2 (emphasis added) (quoting *Khadim* v. *Lab Corp. of Am.*, 838 F. Supp. 2d 448, 452 (W.D. Va. 2011))).  Particularly because of the lack of any evidence that Plaintiff's *impairment* — that is, her thalassemia, and not something else — causes her alleged immune weaknesses, Plaintiff is unable to meet her *prima facie* burden.

## 2. Plaintiff Cannot Establish a Failure to Provide a Reasonable Accommodation

Defendant also argues that summary judgment is appropriate because Plaintiff has failed to establish a nexus between her illnesses and hospitalizations in fall 2010, and her alleged disability.  (*See* Def. Br. 4; Def. Reply 4).  Specifically, Defendant argues that "Plaintiff's claim under the Rehabilitation Act is dependent on showing that she suffered from a qualifying disability that caused her to be absent from class and miss assignments; consequences of her disability for which no reasonable accommodation was given[.]" (Def. Br. 4).  Plaintiff offers no response to this argument.  (*See generally* Pl. Opp.).  Having considered the issue, the Court agrees with Defendant, and finds that this constitutes a separate (and arguably stronger) ground for summary judgment in Defendant's favor.

The Rehabilitation Act is "addressed to rules that hurt people with disabilities *by reason of their handicap*, rather than that hurt them solely by virtue of what they have in common with other people.  In other words, there must be something different about the way the plaintiff is treated 'by reason

31

of ... disability.'" *Henrietta D.*, 331 F.3d at 276 (emphasis in original) (internal citations, quotation marks, and alterations omitted) (quoting 42 U.S.C. § 12132); *see also Andersen* v. *N. Shore Long Island Jewish Healthcare Sys.'s Zucker Hillside Hosp.*, No. 12 Civ. 1049 (JFB), 2015 WL 1443254, at *17 (E.D.N.Y. Mar. 26, 2015) ("[A] claim under the ... Rehabilitation Act is actionable only where a plaintiff can show that she was discriminated against *based on her disability.*" (emphasis in original)).

Because Plaintiff's illnesses and hospitalizations in the fall of 2010 cannot be tied in any way to her alleged disability, Plaintiff cannot satisfy this prong of her *prima facie* case.  Construing the facts in the light most favorable to Plaintiff, she has demonstrated that Defendant refused to permit her to make up coursework after she informed Marymount officials that she suffered an E. coli infection and a severe bout of tonsillitis that sent her to the hospital in late November and early December.  But Plaintiff does not argue that these transitory conditions, no matter how severe, qualify as a disabilities under the Act.  Nor has she established that her illnesses or the concomitant hospitalization resulted from thalassemia — the only impairment here alleged to be a disability within the meaning of the Rehabilitation Act.  This causal gap is fatal to her claim.  *See Buckley* v. *Consol. Edison Co. of N.Y.,* 155 F.3d 150, 1557 (2d Cir. 1998) (en banc) ("Since a neurogenic bladder condition neither is nor results from the only impairment here alleged to be a disability within the meaning of the ADA, and since it is the neurogenic bladder condition that [defendant] refused to accommodate ..., we conclude that Buckley has not

stated a claim under the Act."); *A.* v. *N.Y. Bd. of Elections*, 99 F. Supp. 2d 258, 260 (E.D.N.Y. 2000) ("The A[DA] does not demand accommodation for impairments not causally related to the alleged disability."), *rev'd on other grounds*, 234 F.3d 1262 (2d Cir. 2000).  Accordingly, for this separate reason, Plaintiff has failed to establish her *prima facie* case under the Rehabilitation Act.

## CONCLUSION

It goes without saying that the Court is sympathetic to any difficulties that Plaintiff may experience on account of any medical conditions she has. That, however, is not the issue here.  Rather, Plaintiff made a conscious (and perhaps strategic) decision, in the face of two opinions from this Court, to attempt to prove her claims without any medical evidence (indeed, without any evidence but her supposition) tying her putative condition of thalassemia to her 2010 hospitalizations.  It would have been plainly inappropriate to ask the jury to draw such significant causal connections — between the thalassemia and any deficiency in Plaintiff's immune system, and between the thalassemia and Plaintiff's hospitalizations for E. coli and tonsillitis in the fall of 2010 — on the basis of the documents and testimony anticipated at trial.  For all of these reasons, Defendant's motion for summary judgment is GRANTED in its entirety.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:       July 2, 2015
             New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge